UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

BRANDIN SNIDER                                                        Plaintiffs

v.                                                  Civil Action No. 3:23-cv-486-RGJ

CITY OF LYNDON, *et al.*                                             Defendants

* * * * *

**MEMORANDUM OPINION AND ORDER**

Defendants City of Lyndon ("Lyndon"), City of Lyndon Police Department ("Lydon Police"), Robert Schroeder ("Schroeder"), and Grady Throneberry ("Throneberry") (collectively, "City Defendants") move to dismiss the Amended Complaint. [DE 7]. Plaintiff Brandin Snider ("Snider") responded, and City Defendants replied. [DE 9; DE 10]. Additionally, Defendants Blairwood Apartments of Louisville ("Blairwood") and Gene B. Glick Company ("Glick") (collectively, "Blairwood Defendants") filed a separate motion to dismiss. [DE 8]. Snider responded, and Blairwood Defendants replied. [DE 16; DE 17]. These motions are ripe. For the reasons below, City Defendants' motion to dismiss is **GRANTED** and Blairwood Defendants' motion to dismiss is **GRANTED**.

I.      **Background**

During the time of the alleged incidents, Snider lived at Blairwood Apartments in Jefferson County, Kentucky, within the city limits of Lyndon. [DE 6 at 63–64]. In his Amended Complaint, Snider asserts that Officer Steve Jesse ("Jesse") and two unknown police officers, referred to as John Doe and Jane Doe, "conducted a warrantless search" of his apartment, stealing $32,000 in cash. [*Id.*]. He alleges that these same officers later evicted him from his apartment, which was owned and operated by Blairwood Defendants. [*Id.* at 64].

1

Snider alleges that Jesse "orchestrated" a scheme to steal $32,000 of his cash. [*Id.* at 66]. Jesse was a Lyndon police officer and also served as security personnel for Blairwood Defendants. [*Id.*]. Snider states that, while serving in his security role at Blairwood Apartments, Jesse would portray his actions as "official police work" by wearing his full police uniform, carrying his police badge and firearm, and driving his police cruiser. [*Id.*]. According to the Amended Complaint, Jesse knew that Snider had recently won $32,000 cash in a legal settlement because he overheard him negotiating a lease with Blairwood Defendants saying he could pay in cash. [*Id.* at 67]. Although the Amended Complaint does not say why, it alleges Jesse had "harbored a longstanding animosity towards [Snider], which he conveyed to [Blairwood Defendants]," and that he displayed this hostility through "numerous false accusations, intimidation, and harassment directed at [Snider]." [*Id.* at 66].

Snider says that Blairwood Defendants instructed Jesse to "forcibly evict and remove [Snider] from the premises" because the lease he was negotiating "lacked legal validity," despite the fact that he had "established tenancy and made consistent rent payments." [*Id.* at 67]. Blairwood Defendants did not utilize any formal eviction proceedings or provide any notice. [*Id.*]. On August 29, 2022, using keys provided by Blairwood Defendants, Jesse entered Snider's apartment, woke him up, expelled him, and then re-entered Snider's apartment with Snider outside. [*Id.*]. The Amended Complaint alleges there was no record of this incident created by either the Blairwood Defendants or City Defendants. [*Id.* at 68]. Jesse told Snider he was not allowed back in the apartment. [*Id.*].

Snider called for a police escort to his residence to retrieve his belongings on September 1, 2022. [*Id.*]. John Doe and Jane Doe responded and went to Blairwood Apartments with Snider, where they met with Jesse. [*Id.*]. The three officers told Snider he could not go inside his

apartment even to retrieve his $32,000 in cash because it was a "hazard to life," due to a marijuana pipe located inside. [*Id.*]. Snider alleges he was never charged with any crime regarding the marijuana pipe or otherwise, but that the officers retained his $32,000 in cash and warned him he could be arrested if he returned to Blairwood Apartments. [*Id.* at 68–69].

Snider alleges Jesse, John Doe, and Jane Doe (collectively, "Officer Defendants") were "hired, trained, supervised, and retained" by Lyndon Police. [*Id.* at 69]. The Amended Complaint states that Throneberry and Schroeder—both acting police chiefs for Lyndon Police (Schroeder replaced Throneberry)— "knew or should have known that [Officer Defendants] were not fit to carry out their assigned duties when they hired, trained, supervised and retained them because their records, history, demeanor, psychological makeup, and work record would have elucidated their lack of fitness and competence." [*Id.*]. Throneberry and Schroeder were further on notice when Snider complained to Lyndon Police about the officers' behavior. [*Id.*].

Snider's Amended Complaint brings the following counts under 42 U.S.C. § 1983: "violation of Fourth Amendment protection against illegal searches and seizures" against Jesse (Count 1); "violation of Fourth Amendment protection against illegal seizures of one's property" against John Doe and Jane Doe (Count 2); and "violation of Fifth and Fourteenth Amendment guarantees of due process (procedural and substantive)" against Officer Defendants (Count 3). [*Id.* at 69–72]. Snider also brings the following state law claims: trespass to land against Jesse (Count 4); trespass to chattels against Officer Defendants (Count 5); negligent hiring, supervision, training, and retention against City Defendants (Count 6); negligent supervision, training, and retention against Blairwood Defendants (Count 7); wrongful eviction against Blairwood Defendants (Count 8); conversion against Officer Defendants (Count 9); official misconduct under KRS 522:020–030 against Officer Defendants (Count 10); and intentional infliction of emotional

distress ("IIED") against Officer Defendants and Blairwood Defendants (Count 12).[1]  [*Id.* at 72–

77].  The Amended Complaint requests punitive damages, which it styles as "Count Thirteen."

[*Id.* at 77–78].

## II.   Discussion

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if

it "fail[s] to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  To properly

state a claim, a complaint must contain "a short and plain statement of the claim showing that the

pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  When considering a motion to dismiss,

courts must presume all factual allegations in the complaint to be true and make all reasonable

inferences in favor of the non-moving party.  *Total Benefits Plan. Agency, Inc. v. Anthem Blue*

*Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted).  "But the district court

need not accept a bare assertion of legal conclusions."  *Tackett v. M & G Polymers, USA, LLC*,

561 F.3d 478, 488 (6th Cir. 2009) (citation omitted).  "A pleading that offers labels and conclusions

or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint

suffice if it tenders naked assertion[s] devoid of further factual enhancement."  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to

relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim

is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing

*Twombly*, 550 U.S. at 556).  "A complaint will be dismissed . . . if no law supports the claims

---

[1] The eleventh count in the Amended Complaint is styled as "Count Twelve."  Count 12 immediately follows Count 10, therefore Count 11 is inadvertently omitted in the numbering.  [DE 6 at 77].  For the sake of clarity, the Court will continue to refer to it as numbered in the Amended Complaint.

made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

## A. City Defendants' Motion to Dismiss

City Defendants—Lyndon, Lyndon Police, Schroeder, and Throneberry—move to dismiss "pursuant to Federal Rule of Civil Procedure 12(b) and 12(c) . . . for failure to state a claim[.]" [DE 7 at 80]. The Court construes the motion under Rule 12(b)(6), as this is the appropriate vehicle for City Defendants' motion.[2]  The Court addresses each of their arguments in turn.

### i.    *Official Capacity Claims Against Schroeder and Throneberry*

City Defendants argue that "[a] suit against an individual in his official capacity is the equivalent of a suit against the governmental entity."  [DE 7-1 at 8 (citing *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 68 (1989) and *Kentucky v. Graham*, 473 U.S. 159, 166 (1985))].  The City of Lyndon is already a named defendant, therefore naming individuals in their official capacity is redundant for the purpose of a § 1983 claim.  *See, e.g.*, *Scott v. Louisville/Jefferson Cnty. Metro Gov't*, 503 F. Supp. 3d 532, 541 (W.D. Ky 2020).  Snider clarifies that he does not bring any § 1983 claims against Throneberry and Schroeder, only state law negligence claims. [DE 9 at 124–25].  Accepting Snider's clarification, City Defendants point out that the Amended Complaint still purports to sue Schroeder and Throneberrry in their "individual *and official capacities*."  [DE 10 at 139; DE 6 at 65, ¶¶ 6, 7 (emphasis added)].  As City Defendants correctly assert, [*see* DE 10 at 140], "[s]uits against municipal employees in their official capacities 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"  *Scott*, 503 F. Supp. 3d at 541 (quoting *Graham*, 473 U.S. at 165); *see also Schwindel*

---

[2] Although their motion is not explicit about precisely which rule it is made under, City Defendants' entire "Standard" paragraph cites case law outlining the 12(b)(6) standard.  [DE 7-1 at 85].

*v. Meade Cnty.*, 113 S.W.3d 159, 169 (Ky. 2003) (citing *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001)) (holding state officials sued in official capacity were "cloaked with the same immunity as the government agency he/she represents").  As a result, to the extent that the Amended Complaint names Schroeder and Throneberry in their official capacities, the Court will dismiss those claims.

*ii.    Claims Against Lyndon Police Department*

The Court will also dismiss claims against Lyndon Police for a similar reason.  Because suing a police department is the functional equivalent of suing the city itself, Lyndon is the proper defendant, not Lyndon Police.  [DE 7-1 at 86]; *see Bennett v. Radcliff Police Dept.*, No. 3:10-CV-749-H, 2013 WL 4456677, at \*5 (W.D. Ky. Aug. 16, 2013); *City of Covington v. Covington Lodge No. 1, Fraternal Order of Police*, 622 S.W.2d 221, 223 (Ky. 1981).  Snider responds that *Covington's* holding rests on a distinction between administrative and legislative functions.  [DE 9 at 125–26].  However, there is no question that Lyndon Police is not a proper party in this case because "city and county law enforcement agencies are not entities subject to suit in Kentucky." *Est. of Marr by & through Marr v. City of Glasgow*, No. 121CV00050GNSHBB, 2022 WL 847233, at \*1 (W.D. Ky. Mar. 21, 2022).  Accordingly, because Lyndon Police is "merely an adjunct or department of [Lyndon]," *Gueye v. Richards*, No. 15-178-DLB, 2015 WL 6395009, at \*6 (E.D. Ky. Oct. 21, 2015), all claims against Lyndon Police are dismissed.

*iii.    Count 6 – Negligent Hiring, Supervision, Training, and Retention*

First, City Defendants argue that they cannot be liable for negligent hiring, supervision, training, and retention because Snider alleges no facts showing "[Lyndon] itself committed some wrong" or that "there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  [DE 7-1 at 87–88 (citing *Bd. of Cnty. Comm'rs of Bryan Cnty.*, *Okl.*

6

*v. Brown*, 520 U.S. 397, 403 (1997) and *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 889 (6th Cir. 1993))]. These arguments address § 1983 claims, but Snider brings only state law negligence claims, as he clarifies in his response. [DE 9 at 126–27]. City Defendants also argue that they are entitled to qualified immunity, while Snider responds that they are not entitled to qualified immunity because hiring, supervising, training, and retention of employees are ministerial functions. [*Id.* at 127 (citing *Yanero*, 65 S.W.3d 510)]. But Snider never addresses City Defendants' argument that he fails to allege sufficient facts to state a claim.

City Defendants argue that Snider's allegations are "formalistic" and "bare," [DE 10 at 142–43], making no plausible allegation that City Defendants "knew or had reason to know of the employee[s'] harmful propensities" or that their "hiring, supervision, or retention of such an employee proximately caused [Snider's] injuries," as Kentucky law requires. *Grand Aerie Fraternal Ord. of Eagles v. Carneyhan*, 169 S.W.3d 840, 844 (Ky. 2005) (quoting 27 Am.Jur.2d *Employment Relationship* § 401 (2004)); *see also Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 734 (Ky. 2009) ("Under the theory of negligent hiring/retention, the employer's liability may only be predicated upon its own negligence in failing to exercise reasonable care in the selection or retention of its employees.").

The Court agrees that City Defendants offer no factual allegations "beyond formalistic recitations that [City Defendants] employed [Officer Defendants] and knew or should have known of their lack of fitness." [DE 10 at 143]. In terms of hiring, supervision, and training, all Snider alleges is that "Throneberry and Schroeder knew or should have known that Police Officer Defendants were not fit to carry out their assigned duties when they hired, trained, supervised and retained them because their records, history, demeanor, psychological makeup, and work record would have elucidated their lack of fitness and competence." [DE 6 at 69, ¶ 40]. Beyond this

7

conclusory assertion, Snider offers no additional factual allegations that could show City Defendants had any knowledge or reason to know that Officer Defendants presented a risk. [*See id.* at 74, ¶¶ 70–75]. In terms of retention, while Snider does allege that he complained to Lyndon Police about the Officer Defendants' behavior and that they were retained after his complaint, this happened after the harm to Snider occurred. [*Id.*]. Therefore, even on a theory of negligent retention, Snider makes no allegation that "retention of [Officer Defendants] proximately caused [his] injuries." *Carneyhan*, 169 S.W.3d at 844. As a result, Snider has failed to state a claim for negligent hiring, supervision, training, or retention. City Defendants' motion to dismiss Count 6 is **GRANTED**.

### iv. Counts 1, 2, and 3 – Statute of Limitations for § 1983 Claims

City Defendants argue that Count 1 against Jesse is barred by the statute of limitations. They assert that, because Jesse was not named within the one-year statute of limitations, his addition as a party must "relate back" to the original complaint. [DE 7-1 at 95–96]. And because naming a defendant "in place of a 'John Doe' defendant 'is considered a change in parties, not a mere substitution of parties'" stemming from mistaken identity, Count 1 does not meet the requirements of Federal Rule of Civil Procedure 15(c). [*Id.* at 95–96 (quoting *Smith v. City of Akron*, 476 Fed. App'x 67, 69 (6th Cir. 2012))]. City Defendants further argue that the same problem would befall Counts 2 and 3—involving John Doe and Jane Doe—because Snider still has not named them, and the statute of limitations has also run on those counts. [*Id.* at 96–98]. Snider does not dispute this argument, instead asserting that "equitable estoppel excuses" his failure to name Officer Defendants before the statute of limitations expired because Defendants' actions prevented him from learning their identities. [DE 9 at 128].

When a plaintiff amends their complaint after the statute of limitations has run, the amendment must relate back to the original complaint.  In such cases, Rule 15(c)(1) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when:"

> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(B)–(C).  City Defendants are correct that a one-year statute of limitations applies, and Snider does not dispute this.  [DE 7-1 at 95–96]; *see Hughes v. Vanderbilt University*, 215 F.3d 543, 547 (6th Cir. 2000) (quoting *Berndt v. Tennessee*, 796 F.2d 879, 883 (6th Cir. 1986)) ("In all actions brought under § 1983 alleging a violation of civil rights or personal injuries, the state statute of limitations governing actions for personal injuries is to be applied."); KRS 413.140(1)(a) ("An action for an injury to the person of the plaintiff" is an action that "shall be commenced within one (1) year").

Snider's failure to name Officer Defendants within the statute of limitations is fatal to Counts 1, 2, and 3.  Failure to name a party is not a substitution that relates back under Rule 15(c)(1).  An amendment that changes or substitutes a party is different from an amendment that adds a new party.  *See Rayfield v. City of Grand Rapids, Mich.*, 768 F. App'x 495, 502 (6th Cir. 2019) ("Rule 15(c) is inapplicable when the plaintiff seeks to *add*, rather than subtract or change, the named defendants.") (emphasis in original); *c.f. Ham v. Sterling Emergency Servs. of the*

*Midwest, Inc.*, 575 F. App'x 610, 616 (6th Cir. 2014) ("An amendment that *changes* the party against whom a claim is asserted relates back under Rule 15 if the remaining requirements of Rule 15(c)(1)(C) are met.") (emphasis added) (cleaned up).  Naming Jesse outside the statute of limitations—and potentially identifying John Doe and Jane Doe at a later point—amounts to adding a new party, not the "correction of [a] misnomer[.]"  *In re Kent Holland Die Casting & Plating, Inc.*, 928 F.2d 1448, 1450 (6th Cir. 1991) ("FRCP 15(c) allows the correction of misnomers, but not the addition or substitution of new parties after the statute of limitations has expired.") (citing *Ringrose v. Engelberg Huller Co.*, 692 F.2d 403, 405 (6th Cir. 1982)).  As the Sixth Circuit has stated, "adding new, previously unknown defendants in place of 'John Doe' defendants is considered a change in parties, not a mere substitution of parties, and such amendments do not satisfy the 'mistaken identity' requirement of Rule 15(c)."  *Smith*, 476 F. App'x at 69 (quoting *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996)) (cleaned up).

Snider attempts to salvage his claims by arguing equitable estoppel precludes City Defendants from invoking the statute of limitations because they deliberately concealed Officer Defendants' identities.  [DE 9 at 128–30].  In Kentucky, "[a] person who knows he has been injured has a duty to investigate and discover the identity of the tortfeasor within the statutory time constraints."  *Combs v. Albert Kahn Assocs., Inc.*, 183 S.W.3d 190, 199 (Ky. App. 2006).  But, in certain circumstances, Kentucky law does provide for equitable tolling and equitable estoppel.  In a § 1983 case, "just as limitations periods are taken from state law, so are the rules regarding equitable tolling."  *Kucharski v. Leveille*, 526 F. Supp. 2d 768, 771 (E.D. Mich. 2007) (citing *Wallace v. Kato*, 549 U.S. 384, 394 (2007)); *Hardin v. Straub*, 490 U.S. 536, 538–39 (1989).  The Kentucky Supreme Court has explained that:

> [E]quitable estoppel and equitable tolling are distinguishable.  Equitable estoppel precludes a defendant, because of his own wrongdoing, from using the statute of

> limitations as a defense. *Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 62 (Ky. 2010).
> Equitable tolling pauses a limitations period and does not require any wrongdoing,
> but rather applies when a plaintiff, "despite all due diligence ... is unable to obtain
> vital information bearing on the existence of his claim." *Chung v. U.S. Dept. of
> Justice*, 333 F.3d 273, 278 (D.C. Cir. 2003).

*Williams v. Hawkins*, 594 S.W.3d 189, 193 (Ky. 2020).   Although Snider cites primarily to

Tennessee state law throughout his response, he appears to assert an equitable estoppel argument,

not an equitable tolling argument.[3]  [DE 9 at 128–30].  "Under Kentucky law, equitable estoppel

requires both a material misrepresentation by one party and reliance by the other party:"

> The essential elements of equitable estoppel are: (1) conduct which amounts to a
> false representation or concealment of material facts, or, at least, which is calculated
> to convey the impression that the facts are otherwise than, and inconsistent with,
> those which the party subsequently attempts to assert; (2) the intention, or at least
> the expectation, that such conduct shall be acted upon by, or influence, the other
> party or other persons; and (3) knowledge, actual or constructive, of the real facts.
> And, broadly speaking, as related to the party claiming the estoppel, the essential
> elements are (1) lack of knowledge and of the means of knowledge of the truth as
> to the facts in question; (2) reliance, in good faith, upon the conduct or statements
> of the party to be estopped; and (3) action or inaction based thereon of such a
> character as to change the position or status of the party claiming the estoppel, to
> his injury, detriment, or prejudice.

*Id.* (quoting *Fluke Corp.*, 306 S.W.3d at 62 (citations omitted)).

Here, "the question is whether Plaintiff's *amended complaint* made out a prima facie case

of equitable estoppel because Plaintiff's filing of the complaint outside of the one-year statute of

limitations was the result of [City Defendants'] acts of misrepresentation or concealment."

*Billingsley v. Doe #1*, No. 21-6023, 2022 WL 4088511, at *5 (6th Cir. Sept. 7, 2022) (emphasis

added); *see also Reid v. Baker*, 499 F. App'x 520, 526 (6th Cir. 2012) (citing *Auslender v. Energy

Mgmt. Corp.*, 832 F.2d 354, 356 (6th Cir. 1987) ("[W]hile a defendant ordinarily has the burden

to establish its statute of limitations defense, when the court can ascertain from the complaint that

---

[3] City Defendants discuss both in reply, but the Court reads Snider's response to only assert equitable estoppel.  [*See* DE 10 at 146–51].

the period for bringing the claim has expired, a plaintiff must affirmatively plead an exception to the limitations statute.").  Per the Amended Complaint—filed on October 10, 2023, which still does not identify John Doe or Jane Doe—Snider was expelled from his apartment on August 29, 2022.  [DE 1-1 at 7].  And the original complaint, which did not identify any of Officer Defendants, was filed in Jefferson Circuit Court on August 28, 2023.  [DE 1-1 at 7].  Thus, because it was clear on the face of the complaint that Snider was unable to identify Officer Defendants before the one-year statute of limitations ran, Snider was required to plead his equitable estoppel argument in the complaint.  But he did not make that argument until his response, and all factual assertions that could have supported such an argument—that Snider "sought to discover" the Officer Defendants' names from Throneberry but he "refused to disclose the officers' identities"—are contained in Snider's affidavit attached to his response.[4]  [DE 9 at 128–30; DE 9-1 at 135].

Because none of these facts are present in the Amended Complaint, the Court cannot consider them because "while documents attached to a pleading become part of that pleading, documents attached in response to a motion to dismiss are merely 'matters outside the pleadings'

---

[4] Even if Snider made an equitable tolling argument in addition to equitable estoppel, the outcome would be the same.  Kentucky allows equitable tolling if (1) the plaintiff has made a diligent effort to satisfy the statute of limitations and (2) circumstances beyond the plaintiff's control prevent them from doing so.  *See Stoner v. Percell*, No. 3:13-CV-00762-CRS, 2014 WL 6611557, at *5 (W.D. Ky. Nov. 20, 2014) (citing *Nanny v. Smith*, 260 S.W. 815, 817–18 (Ky. 2008)); *Hill v. State Farm Ins. Co.*, 390 S.W.3d 153, 157 (Ky. App. 2012).  Here again, all of the factual assertions that could have supported an equitable tolling argument—that Snider complained to Lyndon Police, spoke to Throneberry via telephone, searched for the officers' identities on the internet, and reached out to the Jefferson County Sheriff's Office, Kentucky State Police, and the United States Department of Justice—come from Snider's affidavit attached to his response.  [DE 9 at 128–30; DE 9-1 at 133–37].  And, in any event, "[f]iling suit at or near the expiration of the statute of limitations period and then trying to determine the proper defendants does not constitute due diligence."  *See DeSpain v. Louisville Metro. Gov't*, No. 3:14-CV-P602-CHB, 2021 WL 3699413, at *4 (W.D. Ky. Aug. 19, 2021) (citation omitted).

and are not to be considered in evaluating the motion's merits."[5]  *Simon Prop. Grp., L.P. v. CASDNS, Inc.*, No. 3:14-CV-566-CRS, 2015 WL 3407316, at *3 (W.D. Ky. May 26, 2015) (citations omitted).  As a result, because no facts on the face of the Amended Complaint support equitable estoppel (or equitable tolling), the motion to dismiss Counts 1, 2, and 3 is **GRANTED**.

> *v.*     *Count 10 – Official Misconduct*

City Defendants argue that, because KRS 522.020-030 is a criminal statute and does not create a civil cause of action, Count 10 must be dismissed.  [DE 7-1 at 98]; *Keeling v. Hartman*, No. 5:21-CV-57-TBR, 2022 WL 855289, at *4 (W.D. Ky. Mar. 22, 2022) (quoting *Madden v. Calvert*, No. 1:16-CV-P147-GNS, 2017 WL 4366746, at *6 (W.D. Ky. Sept. 29, 2017)) ("[N]either the Kentucky Revised Statutes nor Kentucky case law recognize a corresponding tort law claim for 'official misconduct.'").  Snider attempts to construe his claim under KRS 522.020–030 as a negligence per se claim, arguing that KRS 446.070 allows him to recover for a violation of KRS 522.020–030.  [DE 9 at 130–31]; KRS 446.070 ("A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation.").

KRS 446.070 "codified the common law negligence per se doctrine and created an avenue by which an individual may seek relief even where a statute does not specifically provide a private

---

[5] The Court declines to convert City Defendants' motion to dismiss to a motion for summary judgment, and so it will not consider Snider's affidavit.  *Riestenberg v. Broadview Fed. Sav. & Loan Co.*, 1988 WL 28803, at *1 (6th Cir. 1988) (explaining that "[t]he decision to convert the motion and consider matters outside the pleading is within the discretion of the trial court," but on a motion to dismiss, "matters outside the pleading are not properly considered").  Pursuant to Rule 12(d), the Court could treat the motion "as one for summary judgment under Rule 56" and "[a]ll parties must be given a reasonable opportunity to present all material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).  But Snider had a reasonable opportunity because it was clear from the time he filed the original complaint at the very end of the statute of limitations—let alone the Amended Complaint after it had expired—that he would not be able to name Officer Defendants within one year.

remedy." *Vanhook v. Somerset Health Facilities, LP*, 67 F. Supp. 3d 810, 817 (E.D. Ky. 2014). It creates a private right of action if three conditions are met:

> first, the statute in question must be penal in nature or provide "no inclusive civil remedy," *Hargis v. Baize*, 168 S.W.3d 36, 40 (Ky.2005); second, "the party [must be] within the class of persons the statute is intended to protect," *Young* [*v. Carran*], 289 S.W.3d [586,] 589 [(Ky. App. 2009)] (citing *Hargis*, 168 S.W.3d at 40); and third, the plaintiff's injury must be of the type that the statute was designed to prevent. *Griffith v. Kuester*, 780 F.Supp.2d 536, 547 (E.D. Ky. 2011) (quoting *Carman v. Dunaway Timber Co.*, 949 S.W.2d 569, 570 (Ky. 1997)).

*Id.* Because "[t]he negligence per se doctrine, codified through section 446.070, does not depend on a grant of a private right of action, express or implied, from the statute providing the standard of care," it is possible that KRS 522.020–030 could form the basis of a claim under KRS 446.070. *Hickey v. Gen. Elec. Co.*, 539 S.W.3d 19, 24 (Ky. 2018) (quoting *Vanhook*, 67 F. Supp. 3d at 8190). Even where "no Kentucky or federal court has recognized a cause of action under KRS 446.070" for violating a Kentucky penal statute, "courts applying Kentucky law have presumed that KRS 446.070 claims for violation of Kentucky's criminal statutes under a variety of circumstances[.]" *Id.*

But, even liberally construed, Snider's Amended Complaint does not bring a negligence per se claim. Instead, Count 10 purports to be brought directly under KRS 522.020–030. Snider makes no mention of negligence per se or KRS 446.070 until his response, and City Defendants are correct that Snider cites no cases where a plaintiff was allowed to recover civil damages for a violation of KRS 522.020. [DE 6 at 76; DE 10 at 152]. Therefore, Count 10 must be dismissed. *See Madden*, 2017 WL 4366746, at *6 (dismissing a claim because "[w]hile the Kentucky Penal Code lists 'official misconduct in the first degree' as a criminal offense, KRS 522.020, neither the Kentucky Revised Statutes nor Kentucky case law recognize a corresponding tort law claim for

'official misconduct'"); *Keeling*, 2022 WL 855289, at *4 (dismissing "official misconduct" claim under KRS 522.020).  Accordingly, the motion to dismiss Count 10 is **GRANTED**.

vi.    *Count 12 – Intentional Infliction of Emotional Distress*

City Defendants move to dismiss Snider's IIED claim because Snider (1) alleges one set of facts that already give rise to a traditional tort and (2) fails to allege sufficient facts stating a claim under the elements of IIED.  [DE 7-1 at 98–101].  The Court addresses each in turn.

First, City Defendants argue that Snider's IIED claim must be dismissed because he "alleges a single set of facts, and then asserts several claims based upon those facts."  [DE 7-1 at 100].  Snider brings several claims, including some traditional torts, for which he could recover for emotional damages.  Under Kentucky law, "where an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed, and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will not lie."  *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 299 (Ky. App. 1993).  Put more directly, "a plaintiff cannot maintain *both* a negligence claim and an [IIED] claim based on a single set of facts."  *Childers v. Geile*, 367 S.W.3d 576, 581 (Ky. 2012) (emphasis in original).  The Court must eventually consider "whether the facts support simple or gross negligence leading to a personal injury, some other specific intent tort, or a claim that conduct was intended, or the actor should have known was likely to cause emotional distress with any physical results being consequential."  *Id.*  But, while IIED is a gap-filler tort, "[t]his is not to say that it cannot be pleaded alternatively."  *Id.* at 582; *see also Kustes v. Lexington-Fayette Urban Cty. Gov't*, No. CIV.A. 5:12-323, 2013 WL 4776343, at *2 (E.D. Ky. Sept. 3, 2013) ("A plaintiff can, however, plead an IIED claim in the alternative to a traditional tort claim.").  Therefore, even if the same facts alleged in the Amended Complaint support both

15

IIED and traditional tort claims, that is not grounds for dismissal at this early stage of the litigation. *See Childers*, 367 S.W.3d at 481 (affirming dismissal of IIED claim at *summary judgment* stage and explaining that "while [IIED] could be pleaded alternatively, a litigant cannot prevail on both a negligence claim and an [IIED] claim on the same set of facts").

Second, City Defendants assert that the Amended Complaint fails to state a claim.  [DE 7-1 at 100–01].  An IIED claim requires that "(1) the wrongdoer's conduct was intentional or reckless, (2) the wrongdoer's conduct was outrageous and intolerable, (3) there is a causal connection between the conduct and the emotional distress, and (4) the emotional distress suffered is severe."  *Benningfield v. Pettit Environmental, Inc.*, 183 S.W.3d 567, 572 (Ky. App. 2005).  Snider's Amended Complaint alleges that Jesse entered the apartment using keys provided by Blairwood Defendants, woke Snider up, searched the apartment after expelling Snider, did not allow Snider to retrieve his belongings, and then Officer Defendants stole $32,000 from the apartment.  [DE 6 at 66–69].  If proven, these facts could show that Officer Defendants' conduct was (1) *at least* reckless, (2) was outrageous and intolerable, and (3) caused emotional distress. Even standing alone, it is difficult to imagine how the allegation that Officer Defendants abusing their authority to steal $32,000 and giving a citizen no recourse because they are officers would not satisfy these first three elements for the purpose of a motion to dismiss.

In particular, City Defendants argue that Snider fails to allege the fourth element—that his emotional distress was "severe"—because he "alleges no emotional distress at all."  [DE 7-1 at 101 (emphasis omitted)].  In his Amended Complaint, Snider alleges that "Defendants intended to and did cause Plaintiff to suffer severe emotional distress," but provides no further factual allegations.  [DE 6 at 77, ¶ 101].  It is true that "substantially more than mere sorrow is required" to prevail on a claim for IIED.  *Gilbert v. Barkes*, 987 S.W.2d 772, 777 (Ky. 1999) (reinstating

trial court's dismissal of IIED claim); *see also Schell v. Young*, 640 S.W.3d 24, 44 (Ky. App. 2021) (affirming trial court's dismissal of IIED claim where plaintiff alleged no more than "mere sorrow"); *Osborne v. Keeney*, 399 S.W.3d 1, 17 (Ky. 2012) (explaining that, to recover for emotional distress under Kentucky tort law, it must be a "'severe' or 'serious' emotional injury . . . where a reasonable person, normally constituted, would not be expected to endure the mental stress engendered by the circumstances of the case.  Distress that does not significantly affect the plaintiff[']s everyday life or require significant treatment will not suffice."); *K.K. by & through J.K. v. Clark Cnty. Bd. of Educ.*, 439 F. Supp. 3d 905, 321 (E.D. Ky. 2020) (holding emotional distress was not "sufficiently severe" on motion for summary judgment where plaintiff felt "self-conscious" and "embarrassed" but their "grades did not drop," they "largely returned to a normal schedule," and they did not "pursue psychiatric treatment or counseling").  On a motion to dismiss, this element requires alleging specific facts showing the severity of the emotional distress.  *Bargo v. Goodwill Indus. of Kentucky, Inc.*, 969 F. Supp. 2d 819, 828 (E.D. Ky. 2013) (dismissing IIED claim that only alleged plaintiff suffered "extreme emotional distress and substantial damage");[6] *see also Swartz v. Carlo*, No. 1:12CV3112, 2015 WL 1022073, at *7 (N.D. Ohio Mar. 6, 2015) (granting motion to dismiss IIED claim where complaint alleged no facts "showing [plaintiff's] emotional distress was severe and debilitating" such as "medical treatment, phobia, severe loss of the ability to eat, sleep, work, etc. . . .").

Certainly, Snider need not prove the severity of his distress at this stage, but he must at least allege *some* facts that make it plausible on the face of the Amended Complaint that his emotional distress was severe.  Snider falls short of this bar because he has made no factual

---

[6] The *Bargo* court contrasted the facts alleged with *Burgess v. Taylor*, 44 S.W.3d 806, 812 (Ky. App. 2001), where a successful IIED plaintiff "established that she 'broke down,' suffered from many panic attacks, had major problems with high blood pressure, suffered from anxiety and depression, and contemplated suicide."  969 F. Supp. 2d at 828.

17

allegations about what emotional distress he experienced or the severity of that distress *at all*, therefore the Court cannot find that he plausibly alleged the fourth element of IIED. *See Emrit v. Grammy Awards*, No. 3:23-CV-00828, 2023 WL 8261293, at *2 (M.D. Tenn. Nov. 29, 2023) (dismissing IIED claim in part because "plaintiff fails to allege that the membership termination caused mental injury of any kind, let alone harm so severe that no reasonable person would be expected to endure it") (citation and internal quotation marks omitted); *c.f. Marshall v. Rawlings Co., LLC*, No. 3:14-CV-00359, 2014 WL 4542426, at *4 (W.D. Ky. Sept. 11, 2014) (allowing IIED claim to proceed on motion to dismiss where plaintiff "alleged that she suffers from a variety of mental disorders that were exacerbated by the working conditions at Rawlings, necessitating two periods of leave under the FMLA"). For an IIED claim, severe emotional distress is not merely a matter of damages, but a necessary element of the claim. *Swartz v. DiCarlo*, No. 1:12CV3112, 2014 WL 4955801, at *4 (N.D. Ohio Sept. 29, 2014) (dismissing IIED claim and explaining that "[t]here are no specifics as to how he suffered. Although heightened factual declarations are not required, something more than merely reciting the elements of the claim is not only required, but it is necessary.") (internal citation omitted).

"[T]he question is not whether it is conceivable that [Snider] suffered severe emotional distress but, rather, whether it is plausible that [he] suffered severe emotional distress." *Id.*; *see also Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (internal quotation marks omitted). Snider only recites a single conclusory statement to support this element: "Defendants intended to and did cause Plaintiff to suffer severe emotional distress." [DE 6 at 77, ¶ 101]. As a result, Snider fails to state

a claim on the fourth element of IIED—that his emotional distress was severe—and the motion to dismiss Count 12 is **GRANTED**.

*vii.   Count 13 – Punitive Damages*

"Under Kentucky law, punitive damages 'are a *remedy*, not a cause of action.'" *Archey v. AT&T Mobility, LLC*, No. CV 17-91-DLB-CJS, 2017 WL 6614106, at *4 (E.D. Ky. Dec. 26, 2017) (quoting *Russell v. Citi*, 2012 WL 594745, at *2 (E.D. Ky. Nov. 28, 2012)) (emphasis in original). Therefore, regardless of whether punitive damages would be available to Snider should he prevail on any of his claims, "to the extent [he] asserts punitive damages as a separate cause of action, the claim must be dismissed." *859 Boutique Fitness LLC v. Cyclebar Franchising, LLC*, No. 5:16-CV-018-KKC, 2016 WL 2599112, at *3 (E.D. Ky. May 5, 2016) (citation omitted).

**B.   Blairwood Defendants' Motion to Dismiss**

Blairwood Defendants, Blairwood and Glick, move separately to dismiss Counts 7, 8, 12, and 13. [DE 8]. The Court addresses each in turn.

*i.   Count 7 – Negligent Supervision, Training, and Retention*

To state a claim for negligent hiring or retention, Snider must allege: "(1) the employer knew or reasonably should have known that the employee was unfit for the job for which he was employed, and (2) the employee's placement or retention at that job created an unreasonable risk of harm to the plaintiff." *Stalbosky v. Belew*, 205 F.3d 890, 894 (6th Cir. 2000) (citing *Oakley v. Flor–Shin Inc.*, 964 S.W.2d 438, 442 (Ky. App. 1998)). To state a claim for negligent supervision, he must allege Blairwood Defendants were "negligent or reckless"

> (a) in giving improper or ambiguous orders or in failing to make proper regulations; (b) in the employment of improper persons or instrumentalities in work involving risk of harm to others; (c) in the supervision of the activity; or (d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

*Stanley v. Our Lady of Bellefonte Hosp., Inc.*, No. CIV.A. 11-110-DLB, 2012 WL 4329265, at *9 (E.D. Ky. Sept. 20, 2012) (citing Restatement (Second) of Agency § 213 (1958)).  For all of these types of claims, "there must be some foreseeability or awareness on the part of the employer that the employee created the risk at issue." *Taylor v. JPMorgan Chase Bank, N.A*., No. CIV. 13-24-GFVT, 2014 WL 66513, at *9 (E.D. Ky. Jan. 8, 2014); *see also Cummins v. City of Augusta*, No. 2012-CA-001641-MR, 2013 WL 5436657, at *4 (Ky. App. Sept. 27, 2013) (quoting *Booker v. GTE.net LLC*, 350 F.3d 515, 517 (6th Cir. 2003)) ("With respect to duty, negligent supervision will adhere where an employer 'knew or had reason to know of the risk that the employment created.'").

Blairwood Defendants argue that Count 7 should be dismissed because Snider does not (1) "connect the dots between Officer Jesse's behavior and the Blairwood Defendants supposed knowledge" of it or (2) allege that it was their negligence that "permitted an otherwise avoidable circumstance to occur." [DE 8 at 110–11].  Snider alleges no facts regarding Jesse's training at all.  In terms of supervision and retention, the only facts alleged that could possibly show Blairwood Defendants knew Jesse was a risk are that Jesse (1) "conveyed" to Blairwood Defendants his "longstanding animosity" toward Snider or (2) engaged in "numerous instances of false accusations, intimidation, and harassment directed toward [Snider]." [DE 6 at 66, ¶¶ 15, 16].  The Amended Complaint is devoid of any details about these assertions, never explaining how or when Jesse conveyed this animosity, and never describing a single instance of Jesse falsely accusing, intimidating, or harassing Snider.  As Blairwood Defendants correctly assert, Snider "fails to identify even *one* example of this alleged behavior[.]"  [DE 8 at 110 (emphasis in original)].  Because "a complaint [does not] suffice if it tenders naked assertion[s] devoid of further factual enhancement," *Iqbal*, 556 U.S. at 678, Snider has failed to state a claim for negligent

20

training, supervision, or retention against Blairwood Defendants.  Accordingly, the motion to dismiss Count 7 is **GRANTED**.

*ii.  Count 8 – Wrongful Eviction*

Snider brings Count 8 under KRS 383.655, part of Kentucky's Uniform Residential Landlord and Tenant Act ("KURLTA").  [DE 6 at 75].  It states:

> If a landlord unlawfully removes or excludes the tenant from the premises or willfully diminishes services to the tenant by interrupting or causing the interruption of heat, running water, hot water, electric, gas, or other essential service, the tenant may recover possession or terminate the rental agreement and, in either case, recover an amount not more than three (3) months periodic rent and a reasonable attorney's fee. If the rental agreement is terminated, the landlord shall return all prepaid rent.

KRS 383.655.  Blairwood Defendants emphasize that this statute only applies to a *tenant*.  [DE 8 at 112].  And in order to be a tenant under KURLTA, Snider must be "entitled *under a rental agreement* to occupy a dwelling unit to the exclusion of others."  KRS §383.545(15) (emphasis added).  Snider never alleges he was a party to a rental agreement with Blairwood Defendants. Instead, he asserts that he was a "long-standing resident of the unit," "had his belongings there for many months," "was known as a resident by agents of both Blairwood and Glick," "had been permitted to stay on the premises for many months," "had otherwise established residency," and "was not a trespasser" at Blairwood Apartments.  [DE 8 at 112; DE 6 at 67, ¶ 21].  Snider alleges that he therefore "established tenancy," [DE 6 at 67, ¶ 22], but these facts do everything *but* allege the existence of a rental agreement, which is required to make Snider a tenant under KURLTA.

Snider does allege that he "made consistent rent payments."  [DE 6 at 67, ¶ 22].  But that is not enough to plausibly allege that a rental agreement existed.  Under KURLTA, a "'Rental Agreement' means all agreements, written or oral, and valid rules and regulations adopted under KRS 383.610 embodying the terms and conditions concerning the use and occupancy of a dwelling

21

unit and premises," and "'Rent' means all payments except a security deposit as defined in this section to be made to the landlord under the rental agreement."  KRS 383.545(10)–(11).  Snider's assertion that he resided in a unit is not sufficient to show there was an a "agreement," and although Blairwood Defendants accepting rent could suggest that a rental agreement existed, it is not enough by itself.

In *Thomas v. Cohen*, on a motion for summary judgment, the Sixth Circuit held that "plaintiffs failed to qualify as tenants [of a transitional shelter] under the KURLTA because they have presented no evidence that they had a right to exclusive possession" under a rental agreement, even though plaintiffs paid rent and resided at the shelter.  453 F.3d 657, 662 (6th Cir. 2006).  Although the dissent in *Thomas* reached the opposite conclusion that an oral rental agreement existed that could have provided a right to exclusive possession, it relied in large part on the fact that defendant "admitted the agreement embodied certain terms, which rendered it a rental agreement under Kentucky law."  *Id.* at 667 (Clay, J., dissenting).  While Snider has no obligation to prove anything at this stage of the litigation, he does not even *allege* any terms that would give rise to a rental agreement, nor does he allege any communication with Blairwood Defendants at all establishing a rental agreement.  In fact, the only facts alleged in the Amended Complaint regarding a potential lease are that Blairwood Defendants *rejected* Snider's attempts to negotiate "a long-term, upfront lease" for which he could pay in cash.  [DE 6 at 67, ¶¶ 19, 20].

For the same reason, Snider's argument that he was a holdover tenant also fails.  [*See* DE 16 at 175].  He asserts that he is a holdover tenant under KRS 383.160, but that law also requires the existence of "contract" or rental agreement.  The statute explicitly contemplates a tenant who holds over a lease "after the day of expiration," implying the resident must be a party to an existing lease to "hold over."  KRS 383.160.  As already explained, Snider never alleges he was a party to

a lease.  Instead, in arguing that he is a holdover tenant, he implicitly admits he was *not* a party to a lease for the apartment where he resided.  [DE 16 at 175 ("[B]ecause he was cohabiting with his father, who did have a lease, and remained after the lease expired, but continued to pay rent . . . [Snider] became a holdover tenant[.]")].

Because Snider never alleges that there was a lease executed between himself and Blairwood Defendants, he fails to state a claim under KURLTA.  Accordingly, the motion to dismiss Count 8 is **GRANTED**.

### iii.   Counts 12 and 13 – IIED and Punitive Damages

Blairwood Defendants also move to dismiss Counts 12 and Count 13, making the same arguments as City Defendants in their motion.  They argue (1) Count 12 asserts an IIED claim under the same set of facts as other claims in the Amended Complaint and (2) punitive damages are not a separate cause of action.  [DE 8 at 113–15].  Because the Court has already resolved these arguments above and dismissed Counts 12 and 13, there is no need to discuss them again here. Accordingly, for those same reasons, the motion to dismiss Count 12 and 13 against Blairwood Defendants is **GRANTED**.

### III.    Conclusion

For the reasons explained, and the Court being otherwise sufficiently advised, City Defendants' motion to dismiss [DE 7] is **GRANTED** and Blairwood Defendants' motion to dismiss [DE 8] is **GRANTED**.  Therefore, it is **ORDERED** that:

1. Counts 1, 2, 3, 6, 7, 8, 10, 12, and 13 of Snider's Amended Complaint [DE 6] are **DISMISSED** against all defendants.

2. Counts 4, 5, and 9 remain pending.

Rebecca Grady Jennings, District Judge
United States District Court

June 24, 2024

cc: counsel of record