UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

BRANDIN SNIDER   Plaintiff

v.   Case No. 3:23-cv-486-RGJ-RSE

STEVE JESSE   Defendant

\* \* \* \* \*

## MEMORANDUM OPINION & ORDER

Before the Court are two motions for summary judgment filed by Defendant Steve Jesse ("Jesse"). [DE 26; DE 31]. Plaintiff Brandin Snider ("Snider") responded to both motions [DE 28; DE 34] and Jesse replied [DE 32; DE 35]. For the following reasons, Jesse's first motion for summary judgment [DE 26] is **DENIED**. His second motion for summary judgment [DE 31] is **GRANTED**.

## I. BACKGROUND

Snider was removed from his father's former apartment. He claims that the apartment contained $32,000 in cash and that he lost it in the process. [DE 6 at 73–76]. Several parties and claims have already been dismissed. [*See* DE 18].

The essential facts of this case are not in dispute. At all relevant times, Jesse was an officer with the Lyndon Police Department. [DE 31-3 at 537]. Dismissed Defendants, Blairwood Apartments of Louisville and Gene B. Glick Company (together "Blairwood"), owned and managed the Blairwood Apartments of Louisville, a federally subsidized apartment complex and senior community within Lyndon's city limits. [*See* DE 8 at 105–06]. Snider's father rented an apartment from Blairwood. [DE 31-2 at 369]. Snider moved in to help care for his father, who was in poor health. [*Id.* at 366]. However, Snider was never party to any lease, never paid rent to Blairwood, and was not otherwise entitled to be on the premises. [*Id.* at 369–70, 404, 456–57].

In August 2022, Snider's father vacated his apartment. [*Id.* at 406–07]. Snider's sister returned their father's keys to Blairwood. [*Id.* at 412]. According to Snider, he asked Blairwood to execute a lease with him, but Blairwood declined and informed him that he would not be permitted to occupy his father's former apartment. [*Id.* at 396–98]. Snider was instructed to leave the apartment by the end of the month. [*Id.* at 407–08]. Because Blairwood suspected that Snider had used the apartment for unlawful purposes, it also asked police to accompany its employees and assess whether the unit contained any drug paraphernalia or signs of drug manufacturing. [DE 31-3 at 544–46].

On August 31, 2022, at Blairwood's express invitation, officers including Jesse visited the apartment. [DE 31-2 at 420–21; DE 31-3 at 560–61]. Blairwood unlocked the apartment to grant them access, expecting it to be empty. [DE 31-3 at 545]. They discovered Snider and other individuals inside. [*Id.* at 546]. They also found drug paraphernalia and signs of methamphetamine production. [*Id.* at 556, 559–60; DE 31-4]. The apartment was full of various items and still appeared to be lived in. [DEs 35-2–35-8]. Snider and his companions were ordered to leave, but before Snider left the premises, an officer escorted him to a bedroom so that he could retrieve his phone and wallet. [DE 31-2 at 423–25]. In his deposition, Snider claimed that the bedroom contained $32,000 in cash that day, but he also admitted to not notifying anyone at the time or making any effort to take the cash with him. [*Id.* at 425–30]. Blairwood changed the locks and, because of the methamphetamine contamination, sealed the unit. [*Id.* at 420; DE 31-3 at 555, 558].

On September 1, Snider returned to Blairwood and requested to enter the apartment again, claiming for the first time to Blairwood and Jesse that he had left $32,000 inside. [DE 31-2 at 359–60, 426]. Blairwood turned Snider away. [DE 31-3 at 562–63]. Thereafter, Snider made no other attempts to enter the apartment or retrieve any property from Blairwood. [DE 31-2 at 452]. Jesse,

2

according to his deposition testimony, does not believe that Snider ever had such a large sum of cash in the apartment. [DE 31-3 at 563].

Snider initiated this case in Jefferson Circuit Court. [DE 1-1]. The complaint named nine defendants, including three anonymous police officers. [*Id.*]. Dismissed Defendants, City of Lyndon, the Lyndon Police Department, Robert Schroeder, and Grady Throneberry (collectively "Lyndon"), removed the case to this Court [DE 1] and moved under Rule 12 to dismiss Snider's claims against them [DE 4]. Snider responded by amending his complaint as a matter of course. [DE 6]; *accord* Fed. R. Civ. P. 15(a)(1)(B). Among other changes, the amended complaint replaced one "John Doe" officer-defendant with Jesse. [DE 6]. A second "John Doe" police officer and one "Jane Doe" police officer were still named anonymously. [*Id.*]. The amended complaint asserted 12 causes of action: three federal-rights claims under 42 U.S.C. § 1983, eight Kentucky-law claims, and one count for "punitive damages."[1] [*Id.* at 69–77].

Lyndon and Blairwood, after receiving Snider's amended complaint, separately moved under Rule 12 to dismiss all claims against them. [DE 7; DE 8]. Lyndon's motion also argued for the dismissal of some claims against Jesse and the unnamed officers, who were yet to appear in the case. [DE 7-1 at 101]. Both motions were granted. [DE 18]. Three of Snider's claims remain pending: trespass to land, trespass to chattels, and theft by unlawful taking or conversion.[2]

After the Court dismissed Lyndon and Blairwood from the case, Lyndon's counsel began expressly representing Jesse. [*See* DE 21]. Jesse served written discovery requests, including several Rule 36 requests for admission. [DE 26-2]. When Snider did not respond to those requests, Jesse moved for summary judgment on that basis. [DE 26]. The Magistrate Judge conducted a

---

[1] The amended complaint nominally contained 13 counts but skipped the eleventh. [DE 6 at 76–77].
[2] Trespass to chattels and conversion are pleaded against both Jesse and the two yet-unnamed officers. [DE 6 at 63, 73–75]. Since Jesse's motions seek summary judgment on all remaining claims and a final judgment dismissing this case, those putative defendants are immaterial at this stage. [DE 26-6; DE 31-6].

3

telephonic status conference and ordered Snider to "provide any outstanding written discovery" by December 13, 2024. [DE 27]. Snider served his discovery responses that day [DE 28-2] and also filed an untimely response [DE 28] opposing Snider's dispositive motion.

Both parties were deposed on January 9, 2025. [*See* DE 29]. Thereafter, they jointly asked the Court "to stay any additional fact discovery." [*Id.* at 314]. The Magistrate Judge declined that request. [DE 33]. On January 16, Jesse filed his second motion for summary judgment. [DE 31]. Fact discovery closed the next day. [DE 22]. Now the dispositive-motion deadline has passed as well. [*Id.*].

## II. STANDARD

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law[,]' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The Court may not weigh evidence or make credibility determinations but must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000).

"The burden of demonstrating the absence of a genuine dispute of material fact first rests with the moving party." *George v. Youngstown State Univ.*, 966 F.3d 446, 458 (6th Cir. 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "If the moving party meets this burden, the burden then shifts to the nonmoving party to establish a 'genuine issue' for trial via 'specific facts.'" *Id.* (quoting *Celotex*, 477 U.S. at 324). "The mere existence of a scintilla of evidence,"

4

*Liberty Lobby*, 477 U.S. at 252, or "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, will not defeat summary judgment. Instead, "the non-moving party must 'cit[e] to particular parts of materials in the record . . . or . . . show[] that the materials cited" by the moving party "do not establish the absence . . . of a genuine dispute.'" *United Specialty Ins. v. Cole's Place, Inc.*, 936 F.3d 386, 403 (6th Cir. 2019) (quoting Fed. R. Civ. P. 56(c)(1)).

### III. ANALYSIS

Jesse's first motion for summary judgment arises from Snider's failure to timely respond to requests for admission. The second motion for summary judgment relies on the parties' depositions and other record evidence.

#### A. Snider's Late Discovery and Response Brief

Jesse propounded written discovery requests, including several Rule 36 requests for admission, on October 28, 2024. [DE 26-2]. Snider's responses were due no later than November 27. *See* Fed. R. Civ. P. 36(a)(3). He did not meet that deadline. Jesse consequently moved for summary judgment on December 10, arguing that Snider had admitted by default to the matters raised in the Rule 36 requests. [DE 26-1]. Snider served untimely responses on January 3, 2025, in which he denied some of Jesse's requests for admission. [DE 28-2]. That same day, he filed a late two-page response brief, enclosing his discovery responses and arguing that they rendered Jesse's motion "moot." [DE 28]; *accord* LR 7.1(c).

"A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3). "A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b); *see also Coach Servs., Inc. v. Source II, Inc.*, 728 F. App'x 416, 418 (6th Cir. 2018). "[T]he court may permit withdrawal or amendment if [1] it

5

would promote the presentation of the merits of the action and [2] if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Fed. R. Civ. P. 36(b). In this context, "[p]rejudice . . . 'relates to special difficulties a party may face caused by a sudden need to obtain evidence upon withdrawal or amendment of an admission.'" *Kerry Steel Inc. v. Paragon Indus.,* 106 F.3d 147, 154 (6th Cir.1997) (quoting *Am. Auto. Ass'n v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1120 (5th Cir. 1991)).

Jesse argues under Rule 36(b) that because Snider has not filed a written motion to withdraw his admissions by default, the Court cannot consider his untimely responses. [DE 32 at 590]. However, the rule's "on motion" provision is not so "talismanic." *Kerry Steel*, 106 F.3d at 154. "[A] formal motion is not always required," and "withdrawal may be imputed from . . . the filing of a belated denial." *United States v. Petroff-Kline*, 557 F.3d 285, 293 (6th Cir. 2009) (quotation marks omitted). Still, serving untimely responses does not automatically cure a party's failure to respond within the time permitted. *See Kline v. Mortg. Elec. Registration Sys., Inc.*, 704 F. App'x 451, 458 (6th Cir. 2017); *Goodson v. Brennan*, 688 F. App'x 372, 375 (6th Cir. 2017). In short, the withdrawal or amendment of admissions is a matter left to the Court's discretion. *See Kerry Steel*, 106 F.3d at153–54.

The Court will permit Snider to replace his admissions by default with his untimely responses, including his denials of some requests. Though untimely, his responses were served before fact discovery closed [DE 22] and within the time granted by the Magistrate Judge to "provide any outstanding written discovery" [DE 27]. "[A]llowing the withdrawal of the admission[s]" will serve "the presentation of the merits." *See Kerry Steel*, 106 F.3d at 154. And most importantly, it will not measurably prejudice Jesse: in light of the Court's analysis and

6

conclusions below, he will not face any unexpected need to obtain more evidence after the dispositive-motion deadline. *See Kerry Steel*, 106 F.3d at 154; *see also* Fed. R. Civ. P. 36(b).

### B. Snider's Remaining Claims

In support of Jesse's second motion for summary judgment, his memorandum [DE 31-1] and reply [DE 35] cite extensive record evidence: the parties' depositions [DE 31-2; DE 31-3], a "Methamphetamine Remediation Report" regarding the Blairwood apartment [DE 31-4], and photographs taken inside the apartment [DEs 35-2–35-8].[3] While Snider claims that he "has provided evidence" and "sworn testimony" rebutting Jesse's materials [DE 34 at 594, 599], in reality, his response cites no record evidence at all. His argument relies on his own unverified pleading [DE 6] and, in one instance, the "expected" testimony of someone listed in his Rule 26 initial disclosures [DE 23].[4]

Rule 56(c) outlines a straightforward burden-shifting procedure. If the moving party can establish that there is no genuine dispute of material fact, the nonmovant must rebut that showing. *See Celotex*, 477 U.S. at 322–24; *George*, 966 F.3d at 458. Each side must support its position by "citing to particular parts of materials in the record," showing that the adverse party's materials do not actually support his position or showing that the "adverse party cannot produce admissible evidence to support [its] fact[s]." Fed. R. Civ. P. 56(c)(1); *see also United Specialty Ins.*, 936 F.3d at 403. In fact, the Court may limit its review of the record to the materials cited in the parties' briefs. *See* Fed. R. Civ. P. 56(c)(3). "A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim[s]." *InterRoyal*

---

[3] Jesse has also filed copies of unpublished caselaw as exhibits. [*E.g.*, DE 31-5]. Because those authorities are electronically available, filing them in the record was unnecessary. *See* LR 7.1(h).

[4] Initial disclosures generally "must not be filed until they are used in the proceeding." Fed. R. Civ. P. 5(d)(1)(A). Here, both parties improperly filed theirs the day they were served. [DE 23; DE 24].

*Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989); *see also Abdulsalaam v. Franklin Cnty. Bd. of Comm'rs*, 637 F. Supp. 2d 561, 573 (S.D. Ohio 2009), *aff'd,* 399 F. App'x 62 (6th Cir. 2010). "If a party . . . fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

Snider's reliance on his amended complaint and initial disclosures falls short of what Rule 56 requires. *See Jones v. City of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017) (collecting cases). He cannot rebut Jesse's evidence with mere allegations, *see id.* (citing *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003)), or "speculation" about a witness's potential testimony, *see id.* (citing *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990)); *see also* Fed. R. Civ. P. 26(a)(1)(A) (initial disclosures). It is Snider's duty to present *evidence* that establishes a genuine issue of material fact. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001); *Jones*, 677 F. App'x at 282; *see also Burkesville Hardwoods, LLC v. Coomer*, 738 F. Supp. 3d 883, 887 (W.D. Ky. 2024) (requiring "specific evidence proving the existence of a genuine dispute of fact for trial"); *SMA Portfolio Owner, LLC v. Corporex Realty & Inv., LLC*, 112 F. Supp. 3d 555, 566 (E.D. Ky. 2015), *aff'd sub nom. Bank of Am., N.A. v. Corporex Realty & Inv. Corp.*, 661 F. App'x 305 (6th Cir. 2016) (requiring "the non-moving party" to "cite to evidence in the record").

Because Snider's response fails to properly support his assertions of fact and fails to properly address Jesse's assertions as required by Rule 56(c), the Court will consider the evidence presented by Jesse to be undisputed for purposes of Jesse's motion. *See* Fed. R. Civ. P. 56(e)(2); *see also SMA Portfolio Owner*, 112 F. Supp. 3d at 566 (citing Fed. R. Civ. P. 56(c)). If Jesse's motion and supporting materials—including the facts considered undisputed—show that he is entitled to judgment as a matter of law, then summary judgment must be granted. *See* Fed. R. Civ.

P. 56(e)(3); *see also Burkesville Hardwoods*, 738 F. Supp. 3d at 887 (citing *Liberty Lobby*, 477 U.S. at 247–48).

### 1. *Trespass to Land*

Snider claims that he "both resided in and maintained control over" the Blairwood apartment. [DE 6 at 73]. He alleges that Jesse "intentionally, recklessly, and negligently entered [his] residence with out [sic] [his] permission." [*Id.*]. "The essence of trespass to real property is injury to the right of possession." *Taylor v. Coal-Mac, Inc.*, 864 S.W.2d 302, 305 (Ky. App. 1992) (citing *Ellis v. Beech Creek Coal Co.*, 467 S.W.2d 132, 133 (Ky. 1971)). "[T]o maintain an action for trespass the plaintiff must present evidence to show either that he owns the land *or* was in actual possession of the affected land at the time of the alleged trespass." *Fleming v. EQT Gathering, LLC*, 509 S.W.3d 18, 22 n.4 (Ky. 2017) (emphasis in original). "It is axiomatic . . . that consent completely destroys and negates a trespass claim." *Hamilton v. P.B. Stratton Fam. P'ship*, 709 S.W.3d 287, 315 (Ky. App. 2024).

To claim possession of the apartment, Snider argues that he had established a "tenancy" there. [DE 34 at 599]. But as the Court previously determined, Snider had no rental agreement with Blairwood and was not a holdover tenant.[5] [*See* DE 18 at 203–05]. Furthermore, the record establishes that Blairwood, not Snider, lawfully possessed the apartment on August 31. Snider's deposition testimony shows that his father, the former leasing tenant, had already vacated the apartment and returned the keys. [DE 31-2 at 406–07, 412]. Blairwood had made clear to Snider that it would not accept him as a tenant or permit him to continue using the apartment. [*Id.* at 397–98, 407–08]. Jesse and other officers entered the apartment not only with Blairwood's consent but at its request. [*Id.* at 420–21; DE 31-3 at 544–46, 560–61]. Snider did not possess the apartment,

---

[5] Under Kentucky law, to become a holdover tenant, one must first be a "tenant" with a "contract." *See* Ky. Rev. Stat. § 383.160. Snider was not a party to his father's lease with Blairwood. [*See* DE 18 at 205].

9

which Jesse accessed with Blairwood's consent. Therefore, Snider's trespass-to-land claim fails as a matter of law. *See Hamilton*, 709 S.W.3d at 315.

### 2. *Trespass to Chattels*

Snider claims that he "owned and had the right to possess . . . $32,000 . . . inside of his residence," meaning the Blairwood apartment. [DE 6 at 73]. He alleges that officers including Jesse "intentionally interfered with [his] property and deprived [him] from possessing and using his property." [*Id.*]. "Trespass requires a showing that a defendant intentionally (1) dispossessed another of the chattel or (2) used or intermeddled with a chattel in the possession of another." *Madison Cap. Co. v. S & S Salvage, LLC*, 765 F. Supp. 2d 923, 935 (W.D. Ky. 2011) (citing Restatement (Second) of Torts § 217 (1965)); *see also Ingram Trucking, Inc. v. Allen*, 372 S.W.3d 870, 872–73 (Ky. App. 2012).

Jesse denies taking $32,000 from the apartment or from Snider at any point. [DE 31-3 at 562]. Even if the cash existed, according to Snider's own deposition testimony, he has no evidence—not even his own observations—implicating Jesse in its disappearance. [DE 31-2 at 364, 452–53]. Furthermore, it was Blairwood's decision, not Jesse's, to deny Snider access to the apartment on September 1, 2022. [DE 31-3 at 562–63]. Because there is no evidence that Jesse "dispossessed" Snider of or "intermeddled" with any cash, he is entitled to summary judgment on this claim. *See Madison Cap. Co.*, 765 F. Supp. 2d at 935.

### 3. *Conversion*

Finally, Snider claims that Jesse and the other officers "stole" "$32,000 in cash" from him. [DE 6 at 76]. "Conversion is the 'wrongful exercise of dominion and control over the property of another.'" *Int'l Bhd. of Teamsters Loc. 651 v. Philbeck*, 464 F. Supp. 3d 863, 872 (E.D. Ky. 2020) (quoting *Jones v. Marquis Terminal, Inc.*, 454 S.W.3d 849, 853 (Ky. App. 2014)).

10

> The elements of conversion are as follows: (1) the plaintiff had legal title to the converted property; (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment; (4) the defendant intended to interfere with the plaintiff's possession; (5) the plaintiff made some demand for the property's return which the defendant refused; (6) the defendant's act was the legal cause of the plaintiff's loss of the property; and (7) the plaintiff suffered damage by the loss of the property.

*Brunswick TKTKonnect, LLC v. Kavanaugh*, 661 F. Supp. 3d 698, 713 (W.D. Ky. 2023) (citing *Jones*, 454 S.W.3d at 853); *see also Tew v. MCML Ltd.*, 751 F. Supp. 3d 733, 758 (E.D. Ky. 2024) (quoting *C&H Mfg., LLC v. Harlan Cnty. Indus. Dev. Auth., Inc.*, 600 S.W.3d 740, 745 (Ky. App. 2020)). This claim fails for the same reasons as Snider's trespass-to-chattels claim. [DE 31-2 at 364, 452–53]. Jesse has established that Snider has no evidence to support his allegations of theft. *See* Fed. R. Civ. P. 56(c)(1)(B). Consequently, on the elements restated above, Snider's conversion claim fails as a matter of law. *See Brunswick TKTKonnect*, 661 F. Supp. 3d at 713.

## IV. CONCLUSION

For all these reasons, and the Court being otherwise sufficiently advised, **IT IS ORDERED** that Jesse's first motion for summary judgment [DE 26] is **DENIED** and his second motion for summary judgment [DE 31] is **GRANTED**. The Court will enter separate judgment.

June 2, 2025

Rebecca Grady Jennings, District Judge
United States District Court

11